*1050 RAWLINSON, Circuit Judge,
concurring in part and dissenting in part:
• I concur in the Order with the exception of the discussion of the pleading requirements for aiding and abetting liability under international law. I am of the view that the Plaintiff must plead that the Defendants acted with specific intent to violate the norms of international law. See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 258 (2d Cir.2009) (holding that “a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime”); see also Aziz v. Alcolac, Inc., 658 F.3d 388, 400-01 (4th Cir.2011) (“We conclude that adopting the specific intent mens rea standard for ac-cessorial liability explicitly embodied in the Rome Statute hews as closely as possible to the Sosa [v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) ] limits of requiring any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms the Supreme Court has recognized.”) (citation and footnote reference omitted).
The district court “conclude[d] that the ‘purpose’ mens rea standard is the proper standard to use in Alien Tort Statute litigation. The less stringent ‘knowledge’ standard that was originally synthesized by the International Criminal Tribunal for the former Yugoslavia in Furundzija rests on a number of premises that, while perhaps acceptable under that Tribunal’s enacting authority, fail to satisfy the requirements set forth by the Supreme Court in Sosa.” Doe I v. Nestle, 748 F.Supp.2d 1057, 1083 (C.D.Cal.2010). The district court explained that it was “applying] the dominant approach taken in the recent international appellate tribunal decisions ... requiring] that the aider and abettor must know or have reason to know of the relationship between his conduct and the wrongful acts.” Id. (citation omitted). The district court held:
In sum, the Court concludes that the core definition of aiding and abetting under international law requires the following. A person is legally responsible for aiding and abetting a principal’s wrongful act when the aider and abettor (1) carries out acts that have a substantial effect on the perpetration of a specific crime, and (2) acts with the specific intent (i.e., for the purpose) of substantially assisting the commission of that crime.
Id. at 1087-88 (citations omitted). Thus, it appears that the district court was equating “specific intent” with “purpose” for pleading an aiding and abetting claim under international law.[1]
The district court utilized the same analysis as that used in Presbyterian *1051 Church, in which- the Second Circuit observed that “[t]here is no allegation that [the defendant] (or its employees) personally engaged in human rights abuses; the allegation is that [the defendant] was complicit in Government abuses.” 582 F.3d at 257. The Second Circuit incorporated the standard proposed by Judge Katzmann in his concurring opinion in a prior case. See id. at 258. The Second Circuit presented its mens rea standard by holding that “a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime.” Id. (citation omitted).
The district court relied upon Presbyterian Church to determine that the appropriate mens rea standard was “specific intent (i.e., for the purpose) of substantially assisting the commission of that crime.” Doe, 748 F.Supp.2d at 1087-88 (citátions omitted). In my opinion, the district court’s reliance was consistent with recent indications from the Supreme Court urging restraint in applying the Alien Tort Statute. See Sosa, 542 U.S. at 724-25, 124 S.Ct. 2739.
Although I agree that the case should be remanded to give the Plaintiff the opportunity to amend his Complaint in view of intervening authority, that authority requires Plaintiff to meet the specific intent mens rea pleading standard.

. It is not uncommon for the terms "purpose'' and “specific intent” to be utilized by courts as synonymous. See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir.2000) (observing that "[i]n general, 'purpose' corresponds to the concept of specific intent, while 'knowledge' corresponds to general intent. A person who causes a result prohibited by common law or statute is said to have acted purposely if he or she consciously desired that result, whatever the likelihood of that result ensuing from his or her actions.”) (citations omitted); see also United States v. Meredith, 685 F.3d 814, 826 (9th Cir.2012) (“Jury Instruction 52 defines willfully as an act 'done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say with a purpose either to disobey or disregard the law....’ ”).